## UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

| | |
|---|---|
| Robert Johnson, | Case No. 13-cv-2311 (SRN/FLN) |
| Plaintiff, | |
| v. | **MEMORANDUM OPINION AND ORDER** |
| Derhaag Motor Sports, Inc. and James E. Derhaag, Individually, | |
| Defendants. | |

Eric D. Satre and Jarvis C. Jones, Jones Satre & Weimer PLLC, 7900 Xerxes Ave South, Suite 820, Bloomington, MN 55431, for Plaintiff.

Patrick V. Johnson and Emily J. Streier, Speeter & Johnson, 120 South 6th Street, Suite 1515, Minneapolis, MN 55402, for Defendants.

SUSAN RICHARD NELSON, United States District Judge

This matter is before the Court on Plaintiff's Motion for Partial Summary Judgment [Doc. No. 41]. For the reasons that follow, Plaintiff's Motion is granted in part and denied in part.

## I.    BACKGROUND

### A. Parties and Plaintiff's Claims

On August 23, 2013, Plaintiff Robert Johnson ("Plaintiff" or "Johnson") filed this action against Derhaag Motor Sports, Inc. and James Edward[1] Derhaag (collectively

---

[1]    The Court notes that the parties previously captioned this case: Robert Johnson v. Derhaag Motor Sports and James K. Derhaag. However, during his deposition Derhaag

"Defendants") to recover for alleged unpaid off-the-clock and overtime work-related

activities pursuant to the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 *et seq*.

(Compl. ¶ 1 [Doc. No. 1].)

     Defendant Derhaag Motor Sports "builds and maintains race cars at its shop in

Shakopee[, Minnesota]." (Id. ¶ 12.)  The company also rents out its race cars to drivers

who compete in racing events across the country.  (Derhaag Dep. 14:18-19, Mar. 28,

2014 [Doc. No. 48-1].)  These events are hosted by racing clubs, such as TRANS-AM,

HSR, and SCCA GT1.  (Compl. ¶ 11 [Doc. No. 1].)  Although the racing team members,

who assist the drivers, are employed by Derhaag Motor Sports (Compl. ¶ 11 [Doc. No.

1]), the drivers are "customer[s]" of the business who rent out race cars (Derhaag Dep.

14:18-19, Mar. 28, 2014 [Doc. No. 45-4]).  Simon Gregg is one of Defendants' primary

race car driving customers.  (Id. at 70.)  In fact, Gregg is responsible for producing one to

two million dollars of Derhaag Motor Sports' annual revenue.  (Id.)

     Defendant James E. Derhaag is the owner and Chief Executive Officer of Derhaag

Motor Sports.  (Compl. ¶ 13 [Doc. No. 1]; Derhaag Dep. 9:22-24 [Doc. 48-1].)

"Defendant Derhaag was Plaintiff's manager and was responsible for implementing,

managing, scheduling, and enforcing Defendant Motor Sports' […] employee policies

and practices[,] and for directly requiring Plaintiff to [allegedly] perform uncompensated

off-the-clock work and overtime." (Id. ¶ 15.)

---

testified that his middle name is, in fact, Edward.  The Court has accordingly corrected
the caption in this case.

2

### 1. Plaintiff's First Period of Employment with Defendants, 1997-2000

Robert Johnson worked for Defendants on two separate occasions.  He was first employed by Defendants from June 1997, until October 2000.  (Johnson Dep. 12-13, Mar. 21, 2014 [Doc. No. 48-3].)  During that period of time, Johnson was a salaried employee making $750 a week.  (Id. at 13.)   Johnson contends that he was hired in 1997 as a "car chief."  (Id. at 12-13.)  However, Derhaag explains that Johnson was hired as a "crew person."  (Derhaag Dep. 91:12-19 [Doc. No. 48-1].)

Regardless of Plaintiff's job title during this period of employment, Johnson's responsibilities consisted of building the car, putting it in the truck, maintaining it at the racetrack, and re-building the car after each race.  (Id. at 91:7-10.)  Although Derhaag could not recall Johnson's exact tasks during this period of employment, Derhaag stated that Plaintiff likely would have had to perform mechanical work such as changing engines, rebuilding transmissions, changing rear ends, putting wheels and tires on, putting gas in the car, and "whatever [else] it [took] to make the race car run."  (Id. at 59:9-13, 60:6-8.)

### 2. Plaintiff's Second Period of Employment with Defendants, 2010-2013

Johnson's second period of employment with Defendants was from November 2010, until June 2013.  (Johnson Dep. 77:6-7 [Doc. No. 48-3].)  This is the period of employment that is at issue in this case.  During this time period Defendants classified Johnson as a salaried exempt employee, as opposed to an hourly employee, under the FLSA.  (Compl. ¶ 3 [Doc. No. 1].)  Plaintiff was Defendants' sole employee who was an

3

"exempt" non-hourly employee.  (Derhaag Dep. 35-36, 39-40 [Doc. No. 48-1].)  In June

2013, Derhaag terminated Plaintiff claiming he engaged in direct insubordination.  (Id. at

161:17-18.)

The parties disagree about the job title Johnson held and the duties for which he

was responsible from 2010 to 2013.  As to Plaintiff's job title, Defendants contend that

Johnson was hired as a "crew person" and was later promoted to "crew chief."  (Id. at

28:6-11.)  When Derhaag changed Johnson's title to "crew chief," he also classified

Plaintiff as an exempt employee under the FLSA.  (Id. at 83:17-18.)  Derhaag explained

that Johnson was classified as exempt as crew chief because he thought that "[a]n exempt

employee is someone in a management position that's not an hourly employee."[2]  (Id. at

30:22-24.)  Johnson's position was listed as "crew chief" in at least three distinct

locations.  First, Plaintiff was listed as "crew chief" on the Derhaag Motor Sports

website.  (Johnson Dep. 15-16 [Doc. No. 48-3].)  Johnson contends that he had no input

about his job title listed on the website, and no one consulted him about whether "crew

chief" accurately described his position.  (Id. at 83:9-21.)  Johnson was also listed as

"crew chief" on Simon Gregg's hero card.  (Id. at 15:1-7.)  "A hero card is passed out to

fans or people at the racetrack who just wanted some information about the driver or the

race team."  (Id.)  Again, Johnson contends that he had no input on what his title was on

this document, nor did he have any knowledge of who drafted the document.  (Id. at

---

[2]      Although Johnson was classified as an exempt employee when he was "crew
chief," Derhaag Motor Sports' current crew chief is not classified as exempt.  (Derhaag
Dep. 40:3-15 [Doc. No. 48-1].)  However, the new crew chief is also not paid overtime.
Instead, when the crew chief works more than forty hours a week he receives "comp
time" off.  (Id.; Pl.'s Mem. at 11 [Doc. No. 43].)

82:12-24.)  Finally, even Plaintiff used the title "crew chief" when describing his position at Derhaag Motor Sports in his application for unemployment benefits.  (Id. at 91:8-11.)

While Plaintiff admits that his job title formally changed to "crew chief" in 2011, he claims that the change was merely nominal because he did not in fact act as "crew chief."  (Id. at 15:8-17, 79.)  Instead, Johnson alleges that he was hired as a mechanic and remained a mechanic throughout his employment at Derhaag Motor Sports, until he was terminated.  (Id. at 14:12-17.)  Plaintiff's allegation is bolstered by the fact that his job title was listed as "mechanic" on several documents.  First, in Johnson's application for employment with Derhaag Motor Sports in 2010, Johnson wrote that he was applying for the "mechanic" position.  (Jones Aff., Ex. 5 "Application for Employment" [Doc. No. 45-5].)  Additionally, on Plaintiff's resume, which was last updated while he was still working for Derhaag Motor Sports, Johnson describes his position with Derhaag as "chief mechanic and engineer."  (Id. at 92-93.)  During his deposition, Derhaag denied giving Johnson the job title "mechanic."(Derhaag Dep. 53:5-12 [Doc. No. 48-1].)  However, in the Separation Report that Derhaag completed when he fired Johnson, Derhaag listed Johnson's position as "mechanic."  (Jones Aff., Ex. 5 [Doc. No. 45-5].)  Finally, since Plaintiff was fired, Defendants have sought to hire a replacement employee for the position of "crew member/mechanic."  (Jones Aff., Ex. 18 [Doc. No. 50-9].)

Despite the parties' active debate about Johnson's title, "[a] job title alone is insufficient to establish the exempt status of an employee."  29 C.F.R. § 541.2.  Rather, "[t]he exempt or nonexempt status of any particular employee must be determined on the

basis of whether the employee's salary and duties meet the requirements" of each specific exemption.  See id.

Here, the parties also disagree about the substance of Plaintiff's duties and responsibilities.  Johnson claims that his responsibilities and duties as a mechanic were identical to his duties and responsibilities when his title was changed to "crew chief." (Johnson Dep. 81:6-10 [Doc. No. 48-3].)  These job duties included cleaning, maintaining, and inspecting the race cars, replacing broken worn-out parts, and installing engines in order to "keep the car on all four wheels and going down the road."  (Id. at 33:3-7, 78:1-10.)  Both parties agree that Plaintiff was responsible for completing detailed maintenance preparation checklists while working on Defendants' race cars. (See Jones Aff., Ex. 4 [Doc. No. 45-5]; Derhaag Dep. 140-52 [Doc. No. 48-1].)

Derhaag contends that Plaintiff's responsibilities were much more expansive.  He explains that Johnson had four main duties, including: (1) completing mechanical work; (2) managing Simon Gregg; (3) managing other employees in the racing shop and running the business when Derhaag was out of the country; and (4) helping to hire employees.  The mechanical work that Derhaag recalls Johnson completed involved calling to arrange painting work for the cars, managing an inventory of the supplies and parts necessary for the race cars, recording mileage, lap times, and data from weekend events or races, and purchasing inexpensive car parts without authorization from Derhaag.  (Derhaag Dep. 23:22-25, 24:1-2, 27:3-11, 27:17-23, 203:15-19 [Doc. No. 48-1].)

While Derhaag concedes that Johnson completed mechanical work during his 2010-2013 tenure as an employee, he argues that Johnson was not solely a mechanic. For example, Derhaag contends that Johnson coached and personally managed driver Simon Gregg. (Id. at 201:17-22.) According to Derhaag, managing Gregg involved interfacing with him, talking him into sitting in the race car because Gregg is claustrophobic,[3] taking care of Gregg's laundry and cleaning his racing underwear, and generally "babysit[ting] and manag[ing] all aspects of Mr. Gregg." (Id. at 66-67.) Derhaag described Johnson as "Simon's valet," taking care of all of Gregg's wants and needs. (Id. at 69:10-14.) Defendants claim that Plaintiff also attended the crew chief meetings on behalf of Derhaag Motor Sports when Gregg raced. (Defs.' Resp. at 4-5 [Doc. No. 47].) Additionally, Defendants explain that Johnson was responsible for driving and coordinating logistics with Gregg's coach motor home. (Derhaag Dep. 26:9-17 [Doc. No. 48-1].) Gregg requested that an employee drive his motor home to each race for Gregg's personal use during the event. (Id.) Johnson would "fly to Jacksonville[, Florida,] and pick up the motor home and then drive it to an event somewhere else." (Johnson Dep. 57:17-20 [Doc. No. 48-3].) As compensation for transporting Gregg's motor home, Johnson received an additional $200 a week in his paycheck. (Derhaag Dep. 55:6-16 [Doc. No. 48-1]; Defs.' Answer ¶ 14 [Doc. No. 7].) Plaintiff agrees that he was responsible for transporting Gregg's motor home, but Plaintiff disagrees with Derhaag's characterization of the relationship between Johnson and Gregg. Johnson

---

[3]     Defendants claim that a blurry photograph of Johnson donning a headset during a race is evidence that Plaintiff "communicated with Simon Gregg before, during, and after" races. (Defs.' Resp. at 3 [Doc. No. 47].)

claims that he was not Gregg's "manager," but instead merely encouraged Gregg before and after races.  (Johnson Dep. 64-65 [Doc. No. 48-3].)

In addition to managing Simon Gregg, Derhaag also contends that Plaintiff's responsibilities included managing employees in Derhaag Motor Sports' racing shop and managing the business when Derhaag traveled out of the country.  Derhaag explained that Johnson took care of the shop and managing the people in the shop.  (Id. at 63:2-4.) Plaintiff, however, denies supervising other mechanics in the shop while his job title was "mechanic" or "crew chief."  (Johnson Dep. at 85-86 [Doc. No. 48-3].)  Rather, Johnson claims that he would simply help other mechanics if they had "issues or if something wasn't right."  (Id. at 30:15-18.)  Derhaag additionally contends that when he would leave the country for international travel, Johnson "was in charge."  (Derhaag Dep. 76:4-10 [Doc. No. 48-1].)  In fact, sometimes Derhaag would leave the country for two or three weeks at a time, ostensibly leaving Johnson responsible for daily operations.  (Id. at 76-77.)  During these time periods other employees would report to Plaintiff and receive their assignments from him.  (Id. at 77:11-13.)  Johnson was also allegedly "in charge" at the racetrack if Derhaag was not present and others wanted to borrow a car part or tool. (Id. at 78:6-14.)

Finally, Derhaag claimed in his deposition that Johnson had input on who was hired "to touch race cars" at Derhaag Motor Sports.  (Derhaag Dep. 63:7, 79:17-20 [Doc. No. 48-1].)  Derhaag specifically remembers consulting Johnson when he hired Emrah Oruc, Cody Geiser, Tim Coudron, and Robert Gustafson.  (Id. at 80-81.)  Derhaag explained that while Johnson could not hire anyone himself, he could fire employees.

(Id. at 106:21-22.)  However, Johnson's alleged authority to terminate employees was not documented in any company policies or job descriptions.  (Id. at 106:23-25.)  Moreover, Johnson never exercised this alleged authority because no one was fired from the company while Johnson worked for Defendants from 2010 to 2013.  (Johnson Dep. 83:9-21 [Doc. No. 48-3].)

Pursuant to the FLSA, Defendants are considered "employers," and Plaintiff was Defendants' "employee."  See 29 U.S.C. § 203(d), (e).  Therefore, Defendants are subject to the FLSA minimum wage and overtime provisions.  The FLSA requires that Defendants compensate its employees at a rate not less than minimum wage for the first forty hours worked in a workweek.  29 U.S.C. § 207(a)(1).  For every hour worked in addition to the forty hour workweek, the FLSA requires Defendants to pay its employees "one and one-half times the regular rate at which [they] are employed."  See 29 U.S.C. § 207(a)(1).  Plaintiff claims that Defendants failed to compensate Plaintiff according to these provisions.  (Compl. ¶ 33 [Doc. No. 1].)

### 3.  Parties' Pleadings

On August 23, 2013, Plaintiff filed his Complaint [Doc. No. 1].  Plaintiff alleges that Defendants failed to properly classify Plaintiff as non-exempt, and thus, failed to pay Plaintiff off-the-clock and overtime wages that he was due.  (Compl. ¶¶ 44-48, 52 [Doc. No. 1].)  Moreover, Plaintiff claims that Defendants willfully violated the FLSA within the meaning of 29 U.S.C. § 255; and thus, the statute of limitations should be extended from two years to three years.  (Id. ¶ 49.)  As evidence of Defendants' allegedly willful violation, Johnson contends that "Defendants have failed to make, keep, and preserve

9

records with respect to each of their employees sufficient to determine such employees'

wages, hours, and other conditions and practice of employment."  (Id. ¶ 53.)  Johnson

seeks damages in the amount of his unpaid off-the-clock and overtime work, and

liquidated damages from three years immediately preceding the filing of this action, plus

interest and other damages as allowed by law.  (Id. ¶ 54.)

Defendants filed an Answer on September 12, 2013 [Doc. No. 7].  Defendants

claim that Plaintiff's Complaint fails to state a claim upon which relief may be granted;

and that some or all of Plaintiff's claims may be barred by the statute of limitations.

(Defs.' Answer ¶¶ 1-2 [Doc. No. 7].)  They claim that they did not fail to compensate

Plaintiff because he was an exempt employee pursuant to the FLSA.  (Id. ¶ 4.)

Specifically, they state that "for all times relevant in the Complaint, Plaintiff was a

TRANS-AM race team crew chief and as such performed managerial and administrative

duties and was an exempt employee."  (Id. ¶ 4; see id. ¶ 11.)  Section 13 of the FLSA

exempts certain categories of employees from overtime pay obligations.  See 29 U.S.C. §

213.  In relevant part, 29 U.S.C. § 213(a)(1) exempts employees who are employed "in a

bona fide executive, administrative, or professional capacity."  Two regulations, which

are discussed in detail below, further define the "executive" and "administrative"

exemptions.  See 29 C.F.R. § 541.100 (general rule for executive employees); id. §

541.200 (general rule for administrative employees).

On June 2, 2014, Plaintiff filed a Motion for Partial Summary Judgment [Doc. No.

41] with supporting memorandum [Doc. No. 43] and several exhibits [Doc. No. 45].

Defendants filed their Response Memorandum on June 27, 2014 [Doc. No. 47],

accompanied by several exhibits [Doc. No. 48].  Plaintiff filed his Reply brief on July 14,

2014 [Doc. No. 49], and oral argument was held on August 28, 2014 [Doc. No. 52].

During the hearing, the Court directed counsel to file supplemental briefing regarding

case law on waiver of affirmative defenses in FLSA actions from the United States Court

of Appeals for the Eighth Circuit.  (Mins., Aug. 28, 2014 [Doc. No. 52].)  Plaintiff filed

his Supplemental Memorandum on August 29, 2014 [Doc. No. 54], and Defendants filed

their Supplemental Memorandum on September 9, 2014 [Doc. No. 56].

### B.  Legal Opinion by Defense Counsel

In July 2012, at Derhaag's request, Defense counsel Speeter & Johnson prepared a

legal memorandum about several issues pertaining to Derhaag Motor Sports' business

practices.  (Derhaag Aff. ¶ 3 [Doc. No. 27].)  Plaintiff argues that this legal memorandum

supports his claim that Defendants willfully failed to pay him overtime.  (Pl.'s Mem. at

16 [Doc. No. 43].)

The memorandum contained: (1) a recommended substance abuse policy for

Derhaag Motor Sports to implement; (2) legal advice about whether employees are

required to have breaks under Minnesota state law; (3) legal advice about whether

Derhaag Motor Sports is obliged to provide a reasonable accommodation for Johnson

under the Americans with Disabilities Act ("ADA"); and (4) legal advice about whether

mechanics at Derhaag Motor Sports are considered exempt employees under the FLSA.

(Jones Aff., Ex. 8 [Doc. No. 45-8].)  In the memorandum, Defense counsel concluded

that it is "likely" that mechanics who work for Derhaag Motor Sports do not qualify for

the motor carrier or professional FLSA exemptions; and therefore, the mechanics must be

paid at an hourly rate and paid overtime.  (Id. at 1-2.)  Defense counsel encouraged

Derhaag to review the Hendrick Motor Sports case, in which a different motor sports

company faced a "similar issue" by misclassifying its "mechanics" as exempt employees.

(Id. at 2.)  Plaintiff alleges that Speeter & Johnson definitively declared in this document

that Derhaag Motor Sports' mechanics are *not* subject to FLSA exemptions and must be

paid one and one half times their regular rate for overtime hours worked.  (Pl.'s Mem. at

16 [Doc. No. 43].)  Plaintiff further alleges that Johnson was employed by Derhaag

Motor Sports as a "mechanic."  (Id.)   Therefore, Plaintiff claims that Defendants not only

knew that Johnson was a mechanic, but that they also willfully misclassified Johnson as

exempt after reading this memorandum.  (Id.)

Derhaag admitted during his second deposition that his legal questions about the

substance abuse policy, the necessity of employee breaks, and the applicability of the

ADA were all related to his concerns about Johnson.  (Derhaag Dep. 251-256, June 5,

2014 [Doc. No. 48-2].)  Given Derhaag's concession that three of the four sections of the

legal memorandum explicitly concern Johnson, Plaintiff believes that the remaining

section about exempt employees under the FLSA also pertains to Johnson.  Plaintiff's

belief is supported by the fact that, at the time the legal memorandum was written,

Johnson was the only employee who was classified as exempt and was paid on a salary,

as opposed to hourly, basis.  (Id. at 291:2-6.)

Derhaag contends that his request for legal advice about the exemption status of

mechanics under the FLSA was unrelated to Johnson.  (Derhaag Dep. 283:1-13 [Doc. No.

48-2].)  Nonetheless, during his deposition, Derhaag stated that "when [he was] asking

[his lawyer] about whether mechanics or people who do mechanical work are exempt," he "wasn't specifically talking about *only* [Johnson]." (Id. at 283:4-9) (emphasis added). Therefore, Derhaag arguably implied that although the FLSA exemption question was not limited to Johnson, Johnson was included in the pertinent category of employees.

Besides disagreeing about the relevance of the contents of the memorandum, the parties also disagreed about whether this document was privileged. Plaintiff disclosed that he had possession of a copy of the document during initial discovery exchanges in February 2014. (Johnson Aff. ¶ 4, [Doc. No. 28].) The following month, Defense counsel used this memorandum as an exhibit while deposing Plaintiff on March 18, 2014. (Pl.'s Mem. in Opp'n to Defs.' Mot. in Limine at 11 [Doc. No. 34].) During Derhaag's deposition a few weeks later, Defendants argued that the document was protected by attorney-client privilege. (Derhaag Dep. 190-93 [Doc. No. 48-1].) On May 21, 2014, Magistrate Judge Franklin L. Noel held that Defendants had waived attorney-client privilege "when [D]efense counsel used the memorandum as an exhibit during Plaintiff's deposition." (5/21/14 Order at 2 [Doc. No. 40].) Derhaag was subsequently deposed about the contents of the legal memorandum on June 5, 2014. (Derhaag Dep. 250 [Doc. No. 48-2].) Because this document in not protected by attorney-client privilege, the Court considers it insofar as it is helpful to determine whether to grant Plaintiff's motion in regards to Defendants' alleged willfulness in violating the FLSA.

### C. Defendants' Answer to Plaintiff's Complaint and Defendants' Answers to Plaintiff's Interrogatories

In addition to seeking partial summary judgment, in Plaintiff's Reply brief, Johnson also moved to strike two documents that were used as evidentiary support in Defendants' Opposition Memorandum.  Plaintiff moved to strike Defendants' Answer to Plaintiff's Complaint (Johnson Aff., Ex. 4 [Doc. No. 48-5]) and Defendants' Answers to Plaintiff's Interrogatories (Johnson Aff., Ex. 3, [Doc. No. 48-4]) because he alleges that the documents were not properly verified.  (Pl.'s Reply at 3-4 [Doc. No. 49].)  Johnson argues that because the documents were signed, but not notarized, they violate the Federal Rules of Civil Procedure.  However, Johnson does not specify which rules or provisions were allegedly violated.

## II.   DISCUSSION

### A. Verification of Answer to Complaint and Answers to Interrogatories

Usually, a court determines if summary judgment is proper based on the "*pleadings*, depositions, *answers to interrogatories*, and admissions on file, together with the affidavits, if any…"  Fed. R. Civ. P. 56(c) (emphasis added); see also Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250 (1986).  In order for a party to rely on these documents during summary judgment, they must be properly executed.  As noted above, Plaintiff moved to strike Defendants' Answer to Plaintiff's Complaint (Johnson Aff., Ex. 4 [Doc. No. 48-5]) and Defendants' Answers to Plaintiff's Interrogatories (Johnson Aff., Ex. 3, [Doc. No. 48-4]) because he alleges that the documents were not properly verified.  (Pl.'s Reply at 3-4 [Doc. No. 49].)

14

### 1.  Answer to Complaint

Federal Rule of Civil Procedure 11 governs the signatures and verification

required for a party's pleadings.  Pursuant to Rule 11:

> Every pleading, written motion, and other paper must be signed by at least
> one attorney of record in the attorney's name--or by a party personally if
> the party is unrepresented. The paper must state the signer's address, e-mail
> address, and telephone number. *Unless a rule or statute specifically states*
> *otherwise, a pleading need not be verified or accompanied by an affidavit.*
> The court must strike an unsigned paper unless the omission is promptly
> corrected after being called to the attorney's or party's attention.

Fed. R. Civ. P. 11(a) (emphasis added).  The Local Rules for the District of Minnesota do

not require that every pleading be "verified or accompanied by an affidavit."

Plaintiff claims that a non-notarized Answer to a Complaint "cannot be used for

evidentiary purposes during summary judgment."  (Pl.'s Reply at 4 [Doc. No. 49].)  The

Court disagrees.  Rule 11 and the Local Rules for the District of Minnesota do not require

parties to verify an Answer to a Complaint in order to rely upon it for evidentiary

purposes.  See Fed. R. Civ. P. 11(a).  In order to satisfy Rule 11, Defendants' Answer

must only be signed by one attorney of record and include the attorney's contact

information.  See id.  Defendants' Answer is signed by Defense attorney Patrick V.

Johnson and the signature block includes his mailing, telephone, and email contact

information.  (Johnson Aff., Ex. 4 at 3 [Doc. No. 48-5].)  Therefore, Defendants' Answer

satisfies the requirements of Rule 11.  Accordingly, the Court declines to strike

Defendants' Answer to the Complaint, and permits Defendants to rely on this document

as evidentiary support in their briefing.

## 2.  Answers to Interrogatories

Federal Rule of Civil Procedure 33 governs the use of written interrogatories in civil cases.  In relevant part, Rule 33 provides that "[e]ach interrogatory must, to the extent it is not objected to, be answered separately and fully in writing under oath."  Fed. R. Civ. P. 33(b)(3).  Additionally, Rule 33 requires that "the person who answers [the interrogatories] must sign them."  Fed. R. Civ. P. 33(b)(5).  Courts in the Eighth Circuit have read these provisions in tandem, requiring parties to sign, under oath, all interrogatory responses.  See, e.g., Black Hills Molding, Inc. v. Brandom Holdings, LLC, 295 F.R.D. 403, 412 (D.S.D. 2013); Impact, LLC v. United Rentals, Inc., No. 4:08-cv-00430 (JLH), 2009 WL 413713, at *14 (E.D. Ark. Feb. 18, 2009); Wagner v. Sryvit Systems, Inc., 208 F.R.D. 606, 610 (D. Neb. 2001); In re RBA, Inc., 60 B.R. 953, 962-63 (Bankr. D. Minn. 1986).

Here, Defendants failed to meet the elements required under Rule 33.  At the hearing on August 28, 2014, the Court directed Defense counsel to file an affidavit attesting that the interrogatory answers at issue were duly verified at the time they were served.  (Hr'g Tr. at 14, Aug. 28, 2014.)  Defendants failed to do so.  Defendants admit that although the Answers to the Interrogatories were signed by Defendant Jim Derhaag on February 28, 2014, they were not notarized at that time.  (Defs.' Supp. Mem. at 2 [Doc. No. 56].)  Nonetheless, Defendants contend that the Answers were verified by Plaintiff's counsel, Jarvis Jones, when Mr. Jones asked Derhaag whether his "actual signature appears" on the Answers and Derhaag replied affirmatively.  (Id. at 2-3; Derhaag Dep. 111:16-17 [Doc. No. 48-1].)

16

The Court disagrees.  Derhaag cannot retroactively notarize or verify his signature simply by attesting that the signature on the document is his "actual signature."  Although Derhaag's deposition was taken before a notary public on March 28, 2014, and Derhaag was "duly sworn" before testifying (id. at 1, 4), Rule 33 clearly requires Derhaag to sign his answers in real-time under oath (see Fed. R. Civ. P. 33(b)(3), (b)(5)).  Thus, Derhaag's Answers to Interrogatories are invalid on procedural grounds.  See Blacks Hills Molding, Inc., 295 F.R.D. at 412 (holding that under Fed. R. Civ. P 33(b)(3) and (5), "the plaintiff's responses to interrogatories are invalid on procedural grounds, regardless of the substance of the answers given").  Accordingly, the Court grants Plaintiff's motion to strike this document and all references to the document in Defendants' summary judgment briefing.[4]

In order to use or refer to this document in future proceedings in this case, Derhaag must amend his Answers to Interrogatories so the document complies with Rule 33(b)(3) and (5).  See Impact, LLC, 2009 WL 413713, at *14 (holding that since the defendants' answers to interrogatories were not signed under oath by the party, the defendants "must amend their answers so that they comply with Rule 33(b)(3) and (5)").

---

[4]    Despite this ruling, Defendants' arguments in opposition to Plaintiff's Motion for Partial Summary Judgment are not encumbered.  Much of what is contained in Derhaag's Answers to Interrogatories was reiterated by Derhaag during his depositions.  Therefore, Defendants' inability to rely upon the substance of Derhaag's Answers to Interrogatories is inapposite to the merits of their arguments.

## B.  Partial Summary Judgment

### 1.  Standard of Review

Summary judgment is proper if, drawing all reasonable inferences in favor of the non-moving party, there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(a); Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249-50 (1986).  "Summary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed 'to secure the just, speedy, and inexpensive determination of every action.'" Celotex Corp., 477 U.S. at 327 (quoting Fed. R. Civ. P. 1).

The party moving for summary judgment bears the burden of showing that the material facts in the case are undisputed.  Id. at 323.  However, "a party opposing a properly supported motion for summary judgment may not rest upon mere allegation or denials of his pleading, but must set forth specific facts showing that there is a genuine issue for trial."  Anderson, 477 U.S. at 256.  "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment.  Factual disputes that are irrelevant or unnecessary will not be counted."  Id. at 248.  Moreover, summary judgment is properly entered "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex Corp., 477 U.S. at 322.

Plaintiff seeks partial summary judgment as to two issues of waiver. First, Plaintiff claims that Defendants waived the right to assert FLSA exemption-based affirmative defenses because "Defendants failed to assert [FLSA exemptions] in their Answer." (Pl.'s Mem. at 1 [Doc. No. 43].) In the alternative, Plaintiff argues that if the Court determines that Defendants did not waive their FLSA exemption defenses, then the Court should still grant summary judgment because the three exemption defenses Defendants raise do not apply as a matter of law. (Pl.'s Reply at 9 [Doc. No. 40].) The second issue of waiver for which Plaintiff seeks summary judgment pertains to the alleged willfulness of Defendants' actions. Plaintiff claims that Defendants waived the opportunity to assert that their actions were not willful under the FLSA, "given the legal opinion received from their counsel." (Pl.'s Mem. at 1 [Doc. No. 43].) Alternatively, Plaintiff contends that the legal memorandum sufficiently proves, as a matter of law, that Defendants willfully misclassified Johnson.

## 2.  Waiver and Applicability of Affirmative Defenses

Plaintiff argues that pursuant to Federal Rule of Procedure 8(c), Defendants cannot raise any FLSA exemptions as defenses to Plaintiff's claims because they failed to specify *which* FLSA exemptions they qualified for in their Answer. (Pl.'s Mem. at 13 [Doc. No. 43].) According to Rule 8(c), "[i]n responding to a pleading, a party must affirmatively state any avoidance or affirmative defense." Fed. R. Civ. P. 8(c). As an initial matter, the Court holds that pursuant to Eighth Circuit case law, FLSA exemptions constitute affirmative defenses to Plaintiff's overtime FLSA claims. See Hertz v. Woodbury, 566 F.3d 775, 783 (8th Cir. 2009) (explaining that the "'general rule [is] that

the application of an exemption under the [FLSA] is a matter of affirmative defense on

which the employer has the burden of proof'") (quoting Corning Glass Works v.

Brennan, 417 U.S. 188, 196–97 (1974)) (first alteration in original); Ahle v. Veracity

Research Co., 738 F. Supp. 2d 896, 902 (D. Minn. 2010) (same).

"Generally, failure to plead an affirmative defense results in a waiver of that

defense." First Union National Bank v. Pictet Overseas Trust Corp., 477 F.3d 616, 622

(8th Cir. 2007). However, when reading Defendants' Answer, the Court is guided by the

Eighth Circuit's principle of substance over form. Id. For instance, in Sanders v.

Department of Army, the Eighth Circuit held that the defendant's failure to specifically

state the statute of limitations as a defense was arguably preserved by its "failure to state

a claim" defense, which the defendant pled in its Answer. 981 F.2d 990, 991 (8th Cir.

1992). The Eighth Circuit determined that "[i]t was not necessary for the district court to

require the meaningless formality of an amended answer because the [defendant's]

motion to dismiss, which expressly raised the limitations issue, provided [the plaintiff]

with sufficient notice." Id. In Zotos v. Lindbergh School District, the Eighth Circuit

further explained that "[w]hile [an affirmative] defense must be asserted in a responsive

pleading, it need not be articulated with any rigorous degree of specificity, and is

sufficiently raised for purposes of Rule 8 by its *bare* assertion." 121 F.3d 356, 361 (8th

Cir. 1997) (finding that statute of limitations affirmative defense was sufficiently raised

under Federal Rule 8(c), even though a specific statute was not cited) (internal quotation

marks and citations omitted); see also Holway v. Negro Leagues Baseball Museum, 263

F. App'x 538, 539 (8th Cir. 2008) (holding that statute of limitations affirmative defense was not waived by the failure to cite a specific statute in defendant's answer).

Neither a statute citation, nor the proper *name* of a defense is required in order to meet the Eighth Circuit's minimal pleading standard for affirmative defenses.  For instance, in <u>Barnwell & Hays, Inc. v. Sloan</u>, the Eighth Circuit held that while waiver is an affirmative defense that must be affirmatively pled pursuant to Fed. R. Civ. P. 8(c), the failure to use the word "waiver" in the answer did "not necessarily mean that the answer did not raise the affirmative defense."  564 F.2d 254, 255-56 (8th Cir. 1977) (explaining that "[t]o hold that defendant's answer was insufficient to inject the issue of waiver into the case would impose a requirement of undue formalism which is inconsistent with [the] liberal purpose" of the Federal Rules of Civil Procedure, which "were designed to liberalize pleading requirements").  As applied to this case, if the affirmative defenses pled by Defendants in their Answer refer to FLSA exemptions in substance, if not in form, then the Court may find that Defendants did not waive these defenses.

Even if the Court determines that the Answer fails to state an affirmative defense, the Court has discretion to permit Defendants to belatedly raise an affirmative defense at summary judgment.  Pursuant to Eighth Circuit precedent, Defendants may raise an affirmative defense at summary judgment if Plaintiff is (1) provided adequate notice of the defense, and (2) not prejudiced by the delay.  <u>See First Union National Bank</u>, 477 F.3d at 622-23 (holding that plaintiff constructively amended its pleadings by raising an affirmative defense at summary judgment since defendant did not show that it would be unfairly surprised or prejudiced by the inclusion of the defense); <u>Coohey v. United States</u>,

172 F.3d 1060, 1064 n.8 (8th Cir. 1999) (affirming the district court's grant of

defendant's motion for summary judgment and explaining that defendants properly raised

an affirmative defense at summary judgment); Stoebner v. Parry, Murray, Ward &

Moxley, 91 F.3d 1091, 1093-94 (8th Cir. 1996) (holding that defendant permissibly

raised an affirmative defense at summary judgment); see also LaFleche v. Clark Products,

Inc., No. 05-cv-2549 (MJD/AJB), 2007 WL 2023564, at *11 (D. Minn. 2007) (holding

that the defendant did not waive its affirmative defense by failing to include it in its

answer because "there [was] no evidence that [the plaintiff] [was] unfairly surprised or

prejudiced" by defendant raising the affirmative defense at summary judgment).[5]

    For instance, in Stoebner v. Parry, Murray, Ward & Moxley, the Eighth Circuit

held that the bankruptcy court properly allowed the defendant to raise collateral estoppel

as an affirmative defense in its summary judgment motion because the plaintiff was not

prejudiced by the defendant's delay in raising the defense.  91 F.3d 1091, 1093-94 (8th

Cir. 1996).

    Similarly, in Coohey v. United States, the Eighth Circuit explained that "an

affirmative defense can even be raised on appeal where the evidence supports that

defense." 172 F.3d 1060, 1064 n.8 (8th Cir. 1999) (citing Overholt Crop Ins. Service Co.

v. Travis, 941 F.2d 1361, 1368 (8th Cir. 1991); see also Mason v. Hunter, 534 F.2d 822,

---

[5]     The Eighth Circuit's liberal rule of construction is bolstered by the Supreme
Court's explanation that purpose of the Rule 8(c) pleading requirement is to provide the
opposing party notice as well as an opportunity to rebut the affirmative defense.  See
Blonder-Tongue Labs., Inc. v. University of Illinois Foundation, 402 U.S. 313, 350
(1971) (permitting petitioner, on appeal of a bench trial, to amend its pleadings to include
collateral estoppel affirmative defense because precedent, which had previously
prevented petitioner from pleading this defense, was partially overruled).

825 (8th Cir. 1976); Charles A. Wright and Arthur R. Miller, 5 Federal Practice and Procedure § 1278 at 491–502 (2d ed. 1990)).  Accordingly, the <u>Coohey</u> Court found that the plaintiffs "suffered no prejudice" because they "had ample opportunity to respond" to the affirmative defense of equitable recoupment raised by the government at summary judgment.  <u>Coohey</u>, 172 F.3d at 1064 n.8.

Most recently, in <u>First Union National Bank</u>, the Eighth Circuit interpreted a defendant's belated assertion of an affirmative defense at summary judgment as "constructively amending its pleadings."  477 F.3d at 623.  The court reasoned that (1) the plaintiff had notice of these defenses because the defendant discussed the defenses in at least two other pleadings; and (2) the plaintiff did not suffer prejudice because it demonstrated knowledge of these defenses in its reply brief, and "[a]ll facts relevant to the defense [were] already on the record and not in dispute."  <u>Id.</u> at 623-24.

In Plaintiff's Reply Memorandum, he discusses three specific FLSA exemptions that he believes Defendants have waived: (1) executive exemption; (2) administrative exemption; and (3) motor carrier exemption.  (Pl.'s Reply at 10-25 [Doc. No. 49].)  Alternatively, Plaintiff argues that these three exemption-based defenses fail, as a matter of law, because Defendants pled insufficient facts to support the applicability of the exemptions in this case.  (<u>Id.</u> at 9-10.)  Below, the Court discusses each of these exemptions in turn.

### a.  Executive Exemption

The Court finds that Defendants did not waive their right to state the FLSA executive exemption as an affirmative defense, and a fact issue remains as to whether this

exemption properly applies to Plaintiff.  The FLSA executive exemption is defined in 29

C.F.R. § 541.100.  According to the regulation, if an employee in a "management"

position satisfies each of the elements defined in the four-pronged test, then his employer

is exempt from paying the employee at an hourly wage or overtime.  See 29 C.F.R. §

541.100.

### 1.  Waiver of Executive Exemption

Here, Defendants pled in their Answer that "for all times relevant in the

Complaint, Plaintiff was a TRANS-AM race team crew chief and as such performed

managerial and administrative duties and was an exempt employee."  (Defs.' Answer ¶ 4

[Doc. No. 7].)  Defendants further described Plaintiff's primary work responsibility as

"supervisory, administrative and managerial performance as a team crew chief."  (Id. ¶

11.)  Applying the substance over form principle, the Court finds that Defendants did not

waive the FLSA executive exemption.  See First Union National Bank, 477 F.3d at 622.

The Court interprets Defendants' Answer as specifically pleading the executive

exemption defense.  Although Defendants did not include a precise regulation or state the

executive exemption by name, by stating that Plaintiff qualified as an exempt employee

because he performed managerial and administrative duties, Defendants' Answer

sufficiently invoked the executive exemption under Eighth Circuit precedent.  Zotos, 121

F.3d at 361 (finding that an affirmative defense was sufficiently raised under Rule 8(c),

even though the specific statute was not cited); Holway, 263 F. App'x at 539 (same);

Sloan, 564 F.2d at 255-56 (holding that failure to use the precise term to describe the

affirmative defense did "not necessarily mean that the answer did not raise the affirmative defense").

The Court's finding is bolstered by the questions that Plaintiff's counsel posed during Derhaag's deposition.  The questions indicate that Plaintiff was undoubtedly aware that Defendants intended to plead the executive exemption as an affirmative defense.  For instance, Plaintiff's counsel asked, "[a]s you sit here today, sir, do you know […] the factors that go into considering if an employee qualifies for an executive exemption?"  (Derhaag Dep. 106: 3-6 [Doc. No. 48-1].)  Immediately after Attorney Jones posed this question, Derhaag and Plaintiff's counsel proceeded to discuss the requisite elements for an employee to qualify for the executive exemption.  (Id.)  When Derhaag was subsequently deposed a few months later, Plaintiff's counsel continued to probe Derhaag about whether Johnson qualified for the FLSA professional exemptions.  (Derhaag Dep. 262:17-20, June 5, 2014 [Doc. No. 48-2].)  In fact, Plaintiff's counsel pressed Derhaag to agree that "[his] counsel's [legal] opinion[, which the magistrate judge determined was not protected by attorney-client privilege,] says mechanics do not qualify for the [FLSA] professional exemption."  (Id.)  Therefore, the Court finds sufficient evidence that Defendants asserted the executive exemption in their Answer and did not waive the right to claim this exemption during summary judgment.

### 2.  Issues of Fact Pertaining to Executive Exemption

The Court now addresses whether a material issue of fact remains as to the applicability of this exemption to Johnson.  According to the executive exemption, an "employee employed in a bona fide executive capacity" is:

25

(1) Compensated on a salary basis at a rate of not less than $455 per week . . . , exclusive of board, lodging or other facilities;
(2) Whose primary duty is management of the enterprise in which the employee is employed or of a customarily recognized department or subdivision thereof;
(3) Who customarily and regularly directs the work of two or more other employees; *and*
(4) Who has the authority to hire or fire other employees or whose suggestions and recommendations as to the hiring, firing, advancement, promotion or any other change of status of other employees are given particular weight.

29 C.F.R. § 541.100(a) (emphasis added). An employee must satisfy all four prongs of the executive exemption in order to qualify for this exemption. If these four prongs are met, then an employer is not obligated to pay its employee an hourly wage or overtime.

Defendants argue that Plaintiff qualifies for the FLSA executive exemption because he satisfies each of the four prongs. Defendants claim that (1) Johnson's salary was higher than $455 per week; (2) his primary job duty was to manage the race team; (3) he customarily and regularly directed the work of at least two other employees; and (4) he provided recommendations about whom to hire. (Defs.' Resp. at 11 [Doc. No. 47].) In reply, Plaintiff alleges that, at a minimum, he does not satisfy the second, third, and fourth prongs of the executive exemption test.[6] (Pl.'s Reply at 11 [Doc. No. 49].) As noted above, the Court must deny Plaintiff's motion for summary judgment if genuine issues of material fact remain about the applicability of this exemption. Fed. R. Civ. P. 56(a); Celotex Corp., 477 U.S. at 322-23; Anderson, 477 U.S. at 249-50.

---

[6]     Plaintiff notes in his Memorandum that he "reserves the right to challenge Defendants' ability to satisfy prong one, the 'Salary Basis' test." (Pl.'s Reply at 16 [Doc. No. 49].) However, at this stage of the proceedings, Plaintiff only discusses the second, third, and fourth prongs of the executive exemption test. (Id.)

### i. Management as Primary Duty

The second prong of the executive exemption requires the employee's "primary duty [to be] management of the enterprise in which the employee is employed or of a customarily recognized department or subdivision thereof." 29 C.F.R. § 541.100(a)(2).

"Primary duty" is further defined as "the principal, main, major or most important duty that the employee performs." 29 C.F.R. § 541.700. The duty must be of "principal importance to the employer." Cruz v. Lawson Software, Inc., 764 F. Supp. 2d 1050, 1065 (D. Minn. 2011) (citing Spinder v. GS Roofing Products, Inc., 94 f.3d 421, 427 (8th Cir. 1996)). Under 29 C.F.R. § 541.201, "[t]he phrase 'directly related to the management or general business operations' refers to the type of work performed by the employee. To meet this requirement, an employee must perform work directly related to assisting with the running or servicing of the business, as distinguished, for example, from working on a manufacturing production line or selling a product in a retail or service establishment." This Court recently held that in order to find that a plaintiff is exempt under this regulation, the plaintiff's work must be "directly related to [the employer's] management or general business operations; it is *not* enough for [the plaintiff's] work to be essential because it is the core of [the employer's] business or for [the plaintiff's] work to be tangentially related to management or operations that operate to service [the employer] itself." Grage v. Northern States Power Co., _ F. Supp. 3d _, No. 12-cv-2590 (JRT/JSM), 2014 WL 4639526, at *14 (D. Minn. Sept. 16, 2014) (emphasis added).

The Wage and Hour Division of the Department of Labor further defines the term "management" in a "Fact Sheet" issued in July 2008.  According to this document, "'management' includes, but is not limited to, activities such as interviewing, selecting, and training employees; . . . directing the work of employees; . . . planning the work; . . . apportioning the work among the employees; determining the type of materials, supplies, machinery, equipment or tools to be used or merchandise to be bought, stocked, or sold . . . ." (Jones Aff., Ex. 12 "Fact Sheet #17B: Exemption for Executive Employee Under the Fair Labor Standards Act (FLSA)" [Doc. No. 50-3].)[7]  In order to determine whether an employee's most important duty is managing others, the Court considers the following factors:

> the relative importance of the exempt duties as compared with other types of duties; the amount of time spent performing exempt work; the employee's relative freedom from direct supervision; and the relationship between the employee's salary and the wages paid to other employees for the kind of nonexempt work performed by the employee.

29 C.F.R. § 541.700.

Taking these factors into account, the Eighth Circuit held in Auer v. Robbins that precinct sergeants qualified for the executive exemption because they were primarily

---

[7]      Both parties cite to "Fact Sheets" compiled by the Wage and Hour Division of the Department of Labor.  (See Pl.'s Mem. at 13-14 [Doc. No. 43]; Defs.' Resp. at 10-11 [Doc. No. 47].)  While these administrative documents do not carry the force of law, the Court finds that the Department of Labor's views are entitled to judicial deference because the agency is directed by Congress to administer the FLSA.  See 29 U.S.C. § 204.  As the United States Supreme Court explained in United States v. Mead Corp., "[a]n agency's interpretation may merit some deference whatever its form, given the specialized experience and broader investigations and information and given the value of uniformity in its administrative and judicial understandings of what a national law requires." 533 U.S. 218, 234 (2001) (citing Skidmore v. Swift & Co., 323 U.S. 134 (1944)).

responsible for managing the subordinate patrol officers in their precincts by supervising the officers, inspecting the officers during roll call, and taking corrective action when a subordinate was deficient.  65 F.3d 702, 713 (8th Cir. 1995).[8]  In contrast, in Smith v. Heartland Automotive Services, Inc., this Court weighed the factors outlined above and held that "genuine issues of material fact [existed] with respect to whether [store managers'] performance of management duties[, as opposed to their mechanical duties,] was of primary importance to [the defendant]."  418 F. Supp. 2d 1129, 1135 (D. Minn. 2006); see also Spinden, 94 F.3d at 427 (explaining that a "primary duty" must be of principal importance to the employer).  Thus, the Smith Court denied the defendant's motion for summary judgment as to the applicability of the executive exemption.  Id.

Here, the parties disagree about whether the record indicates that Johnson's most important duty consisted of managing the racing department of Derhaag Motor Sports. (Pl.'s Reply at 11-13 [Doc. No. 49]; Defs.' Resp. at 11-3 [Doc. No. 47].)  Plaintiff claims that Johnson's primary duty was to complete maintenance work for the racing cars.  (Pl.'s

---

[8]       The Court notes that the Auer Court's holding is based on an interpretation of the pre-2004 version of the FLSA regulations, which had different salary requirements for employees.  Before the regulations were revised in 2004, courts utilized two tests, a "short test" and a "long test," when determining which elements were required for the executive and administrative exemptions.  The stricter "long test" for the executive and administrative exemptions applied to employees earning at least $155 per week.  See 29 C.F.R. § 541.2 (2003).  The more lenient "short test" applied to employees earning over $250 per week.  See 29 C.F.R. § 541.2 (2003).  The 2004 amendments to the FLSA regulations eliminated the short and long test salary and duties distinction.  Currently, employees are required to receive at least $455 per week to qualify for either exemption. 29 C.F.R. § 541.100(a)(1); Id. § 541.200(a)(1).  Despite this change in the law, the Auer Court's discussion of the non-salary prongs of the executive exemption remains controlling precedent.  Additional pre-2004 Eighth Circuit cases cited throughout this Order are similarly controlling despite the change in salary requirements.

Reply at 12 [Doc. No. 49].)  Indeed, Derhaag repeatedly stated during his deposition that

Johnson's job was to do "whatever" it took for the race car to run.  (Derhaag Dep. 59,

101 [Doc No. 48-1].)  In contrast, Defendants argue that while Plaintiff completed some

mechanical work, Johnson's "job duties were managerial in nature."  (Defs.' Resp. at 11

[Doc. No. 47].)  In relevant part, Defendants claim that Johnson managed the racing

shop, directed the work of employees within the racing division of Derhaag Motor

Sports, and autonomously purchased car supplies and materials. (Derhaag Dep. 63:2-4,

203:15-19 [Doc. No. 48-1]; Jones Aff., Ex. 12 "Fact Sheet #17B" [Doc. No. 50-3]

(explaining that "management" includes directing the work of other employees and

determining which materials to buy).)

 Based on the record currently before the Court, the Court finds that a genuine

issue of fact remains as to whether Johnson qualifies for the executive exemption.  As in

Smith, the parties disagree about which of Johnson's duties were of primary importance

for Defendants.  Smith, 418 F. Supp. 2d at 1135.  While Plaintiff attests that his primary

duties were mechanical in nature, Derhaag attests that Johnson's primary duties were

managerial. Additionally, while the amount of time an employee spends performing

exempt work is often a helpful guide for courts to determine if that employee is exempt,

(see 29 C.F.R. § 541.700), here, the parties did not brief the percentage of time Johnson

dedicated to his various duties.  Moreover, the parties disagree not only about which tasks

were most important, but they also disagree about which tasks Johnson *actually*

performed.  The question of how Plaintiff spent his working time "is a question of fact"

appropriate for a jury.  Icicle Seafoods, Inc. v. Worthington, 475 U.S. 709, 714 (1986).

Accordingly, the Court denies Plaintiff's motion as it pertains to the applicability of the executive exemption since genuine issues of material fact about Johnson's "primary duty" exist.  Celotex Corp., 477 U.S. at 323.

### ii. Customarily Directing Work of Two Employees

A dispute over whether Johnson customarily directed the work of two or more employees also precludes the Court from entering summary judgment as to whether Johnson qualifies for the executive exemption.  The third prong of the executive exemption test requires an employee to "customarily and regularly direct[] the work of two or more other employees." 29 C.F.R. § 541.100.  According to 29 C.F.R. § 541.701, the phrase "customarily and regularly" implies a "frequency that must be greater than occasional but which, of course, may be less than constant."  For instance, tasks performed "customarily and regularly" includes work that was performed "every workweek," but does not include "isolated or one-time tasks." 29 C.F.R. § 541.701.

As with Plaintiff's primary duty, the parties disagree about whether Johnson customarily and regularly directed the work of two or more employees.  Defendants claim that Plaintiff managed other mechanics working in Derhaag Motor Sports' shop. (Derhaag Dep. 63:2-4 [Doc. No. 48-1].)  Plaintiff concedes that, in addition to Johnson, at least two other "mechanics" worked for Derhaag Motor Sports while Johnson was employed by Defendants.  (Pl.'s Mem. at 7 [Doc. No. 43].)  Therefore, if Defendants

correctly characterize Johnson's role, then Johnson may have regularly supervised the requisite number of employees to qualify for the executive exemption.[9]

Plaintiff, however, denies supervising other employees in the shop. (Johnson Dep. at 85-86 [Doc. No. 48-3].) Rather, Johnson claims that he would simply help other mechanics if they had "issues or if something wasn't right." (Id. at 30:15-18.) Plaintiff further argues that during discovery Defendants failed to produce "even one contemporaneous document evidencing that Plaintiff had any sort of management responsibilities over [Derhaag Motor Sports'] employees." (Pl.'s Reply at 15 [Doc. No. 49].)

The dispute over whether Plaintiff "customarily and regularly" directed the work of "two or more employees" precludes the Court from finding that Johnson does not qualify for the executive exemption. Anderson, 477 U.S. at 248 (explaining that "disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment"). Thus, disputed issues of fact pertaining to the third prong of the executive exemption test provide an additional basis for the Court to deny Plaintiff's motion for summary judgment as to the applicability of the executive exemption.

---

[9]     Derhaag additionally contends that when he would leave the country for international travel, Johnson was responsible for daily operations of the business and employees would report to Plaintiff and receive their assignments from him. (Derhaag Dep. 76-77 [Doc. No. 48-1].) However, the Court finds that the infrequency of Derhaag's travel fails to satisfy the "customarily and regularly" requirement of the executive exemption. See 29 C.F.R. § 541.701. Thus, the Court focuses solely on Defendants' allegation that on a regular basis Plaintiff supervised the mechanics in the racing shop.

### iii. Authority to Hire and Fire

The fourth prong of the executive exemption test requires the employee to have "the authority to hire or fire other employees or whose suggestions and recommendations as to the hiring, firing, advancement, promotion or any other change of status of other employees are given particular weight." 29 C.F.R. § 541.100(a)(4). The Eighth Circuit recently discussed the contours of the fourth element of the executive exemption test in Madden v. Lumber One Home Center, Inc., 745 F.3d 899, 905-06 (8th Cir. 2014). In Madden, the court held that in order to determine if an employee satisfies the hiring/firing component of the executive exemption, the Court must look to an employee's "actual job functions, not intended responsibilities." 745 F.3d at 906 (citing 5 C.F.R. § 551.202(e) (noting that FLSA exemptions are based on "duties actually performed by the employee")). Based on the actual job functions of one plaintiff, the Madden Court held that the plaintiff qualified for the executive exemption because for at least one personnel decision, the employer gave the plaintiff's input "particular weight." Id. at 908.

In this case, the parties disagree about whether Johnson had the authority to fire employees. Derhaag stated in his deposition that Johnson had the authority to fire employees. (Derhaag Dep. 106:21-22 [Doc. No. 48-1].) As noted above, however, this authority was not documented in any company records. (Id. at 106:23-25.) Furthermore, Johnson never exercised this alleged authority as no employee was ever fired during Plaintiff's term of employment. (Pl.'s Reply at 15 [Doc. No. 49].) Since the Court must look to Plaintiff's "actual job functions, [and] not [his] intended responsibilities," the

Court finds that Defendants did not adequately demonstrate that Plaintiff had the authority to fire employees.  See Madden, 745 F.3d at 906; 5 C.F.R. § 551.202(e).

Although Plaintiff did not have the explicit authority to hire or fire other employees, he still satisfies the fourth element of the executive exemption if Defendants gave Plaintiff's recommendations about hiring others "particular weight."  29 C.F.R. § 541.100(a)(4).  Derhaag contends that Johnson provided persuasive input about whether to hire several employees, including Emrah Oruc, Cody Geiser, Tim Coudron, and Robert Gustafson.  (Derhaag Dep. 80-81 [Doc. No. 48-1].)  In fact, Derhaag claimed that he "wouldn't have hired anybody that [Johnson] thought wouldn't fit into the mix of the people."  (Id. at 80:9-14.)  Plaintiff does not contest that he provided Derhaag with recommendations about whom to hire.  Thus, Defendants adequately set forth facts showing that Plaintiff satisfies the fourth element of the test.  Anderson, 477 U.S. at 256.  Accordingly, the Court concludes that no genuine issues of fact exist about whether Derhaag gave Plaintiff's recommendation about whom to hire particular weight.  Nonetheless, because genuine issues of fact remain as to the second and third prongs of the executive exemption test, the Court denies Plaintiff's motion for summary judgment as to the applicability of the executive exemption defense.

### b.  Administrative Exemption

The Court finds that Defendants also did not waive their right to state the FLSA administrative exemption as an affirmative defense, and fact issues remain as to whether this exemption properly applies to Plaintiff.  The administrative exemption is defined in 29 C.F.R. § 541.200.  According to this regulation, an employee who exercises

independent judgment with respect to matters of significance and whose primary duty includes administrative office work is exempt from the FLSA.

### 1.  Waiver of Administrative Exemption

Based on the language used in Defendants' Answer the Court finds that as with the executive exemption, Defendants adequately pled the administrative exemption in their Answer.  Defendants specifically stated that Plaintiff was an exempt employee because he performed "managerial and *administrative*" duties.  (Defs.' Answer ¶ 4 [Doc. No. 7].)  Reading Defendants' Answer as a whole, it is evident that Defendants intended to refer to the administrative exemption.  Although Defendants neither listed the statutory or regulatory citations for the administrative exemption, nor used the phrase "administrative exemption," the Court finds that the language in Defendants' Answer is sufficient to meet the requirements of Rule 8(c).  See Zotos, 12 F.3d at 361; Holway, 263 F. App'x at 539; Sloan, 564 F.2d at 255-56.  As with the executive exemption, the Court's holding pertaining to the administrative exemption is bolstered by the fact that Plaintiff's counsel questioned Derhaag about the applicability of the FLSA professional exemptions.  In fact, Plaintiff's counsel asked Derhaag if he had "ever heard the term 'administrative exemption.'"  (Derhaag Dep. 107:10-11 [Doc. No. 48-1].)  Therefore, it is evident that Defendants adequately stated the administrative exemption as an affirmative defense in their Answer, and Plaintiff was aware of the potential applicability of this defense.  The Court accordingly denies Plaintiff's motion with respect to Defendants' waiver of the administrative exemption.

## 2.  Issues of Fact Pertaining to Administrative Exemption

The Court now addresses whether material issues of fact exist about whether

Johnson qualifies for the administrative exemption.  Pursuant to 29 C.F.R. § 541.200, an

"employee employed in a bona fide administrative capacity" in section 13(a)(1) of the

FLSA shall mean any employee:

> (1) Compensated on a salary or fee basis at a rate of not less than $455 per
> week . . . exclusive of board, lodging or other facilities;
> (2) Whose primary duty is the performance of office or non-manual work
> directly related to the management or general business operations of the
> employer or the employer's customers; *and*
> (3) Whose primary duty includes the exercise of discretion and independent
> judgment with respect to matters of significance.

29 C.F.R. § 541.200(a) (emphasis added).  As with the executive exemption, an

employee must satisfy all three prongs of the administrative exemption definition in order

to qualify for this exemption.

While Defendants claim that Plaintiff meets all three elements of the

administrative exemption test, Plaintiff argues that Johnson fails to satisfy the second and

third prongs of the test.[10]  (Pl.'s Reply at 16 n.4 [Doc. No. 49].)

### i. Management as Primary Duty

To qualify for the administrative exemption an employee's "primary duty" must

consist of "office or non-manual work directly related to the management or general

business operation of the employer or the employer's customers."  29 C.F.R. §

---

[10]     In his Reply brief, Plaintiff reserved the right to challenge Defendants' ability to
satisfy the salary requirement of the test, but noted that for the purposes of summary
judgment, he cabined his arguments to the second and third prongs of the test.  (Pl.'s
Reply at 16 n.4 [Doc. No. 49].)

541.200(a)(2). "Thus, for example, employees acting as advisers or consultants to their employer's clients or customers (as tax experts or financial consultants, for example) may be exempt." 29 C.F.R. § 541.201(c).

In order to determine an employee's primary duty, the Court considers the same factors as it did for the executive exemption:

> the relative importance of the exempt duties as compared with other types of duties; the amount of time spent performing exempt work; the employee's relative freedom from direct supervision; and the relationship between the employee's salary and the wages paid to other employees for the kind of nonexempt work performed by the employee.

29 C.F.R. § 541.700. "'[A]n employee's primary duty is that which is of principal importance to the employer, rather than collateral tasks which may take up more than fifty percent of his or her time.'" Cruz, 764 F. Supp. 2d at 1065 (citing Spinden, 94 F.3d at 427). In Jarrett v. ERC Properties, Inc., the Eighth Circuit explained that if most of an employee's tasks involve routine clerical duties or manual labor, then the employee's primary duty is not management, and the employee does not qualify for the administrative exemption. 211 F.3d 1078, 1082 (8th Cir. 2000).

Here, Defendants argue that Plaintiff's primary duty was the management of Derhaag Motor Sports' sole customer, Simon Gregg. (Defs.' Resp. at 12 [Doc. No. 47].) In contrast, Plaintiff claims that "[i]t is undisputed that Johnson's primary dut[y] as an auto mechanic was to provide 'non-office,' 'manual' maintenance work.'" (Pl.'s Reply at 17 [Doc. No. 49] (citing Derhaag Dep. 55-59, 101-03 [Doc. No. 48-1]; Jones Aff., Ex. 7 "Preparation Checklist" and "Prep List" [Doc. No. 45-7]).) Plaintiff also contends that he did not "manage" Simon Gregg. (Pl.'s Reply at 18 [Doc. No. 49].) Rather, Plaintiff

clarifies that he was merely Gregg's babysitter and valet. (Id.) Johnson explains that washing Gregg's clothes, going to the grocery store for Gregg, and driving Gregg's motor home are manual activities that do not equate to serving as Gregg's consultant or adviser. (Derhaag Dep. 65-75 [Doc. No. 48-1].) If Plaintiff's account of his duties is accurate, then pursuant to Jarrett, Johnson likely does not qualify for the administrative exemption. Jarrett, 211 F.3d at 1082.

The Court finds that genuine issues of material fact remain as to (1) whether Plaintiff performed non-manual work, advising or managing Gregg, and (2) whether the most important duty Plaintiff performed for Defendants was managing Gregg. The parties point to contrasting evidence within the record about Johnson's relationship with Gregg. See supra Part I.A. Given the parties' disagreement about this material fact, the Court finds that summary judgment with respect to the applicability of the administrative exemption is inappropriate. See Fed. R. Civ. P. 56(a); Celotex Corp. 477 U.S. at 322-23; Anderson, 477 U.S. at 249-50.

### ii. Exercise Discretion for Matters of Significance

The parties' disagreement about Plaintiff's primary duty extends to the third element of the administrative exemption test, which requires that an employee's "primary duty include[] the exercise of discretion and independent judgment with respect to matters of significance." 29 C.F.R. § 541.200 (a)(3). A "Fact Sheet" from the Wage and Hour Division of the U.S. Department of Labor counsels the Court that "the exercise of discretion and independent judgment involves the comparison and the evaluation of possible courses of conduct and acting or making a decision after the various possibilities

have been considered."  (Jones Aff., Ex. 14 "Fact Sheet #17C: Exemption for

Administrative Employees Under the Fair Labor Standards Act (FLSA)" at 2 [Doc. No.

50-5].)  Furthermore, the Department of Labor explains that "[a]n employee does not

exercise discretion and independent judgment with respect to matters of significance

merely because the employer will experience financial losses if the employee fails to

perform the job properly."[11]  (Id.)

This Court has previously interpreted the third prong of the administrative

exemption test as requiring more than following written guidelines or applying

knowledge and skill in determining what procedure to follow.  See Ahle v. Veracity

Research Co., 738 F. Supp. 2d 896, 905-06 (D. Minn. 2010) (citing Fenton v. Farmers

Insurance Exchange, 663 F. Supp. 2d 718 (D. Minn. 2009); Gusdonovich v. Business

Information Co., 705 F. Supp. 262 (W.D. Pa. 1985)).  For instance, in Fenton, this Court

held that insurance investigators did not exercise discretion and independent judgment for

matters of significance because written guidelines proscribed what investigators should

include in their reports and they had no authority to determine whether a claim should be

denied or whether the insurance company should seek to negotiate a settlement.  663 F.

Supp. 2d at 727.  Similarly, in Ahle, this Court held that claims investigators did not

qualify for the administrative exemption because they did "not have the discretion to

---

[11]      As with the Department's interpretation about the executive exemption, the Court
finds that Department's interpretation of the administrative exemption is also entitled
deference.  See 29 U.S.C. § 204; United States v. Mead Corp., 533 U.S. at 234 (2001)
(holding that "[a]n agency's interpretation may merit some deference whatever its
form").

decide when to conduct an investigation, where to conduct it, or the length of time to spend on it." 738 F. Supp. 2d at 906.

Here, a genuine issue of material fact remains as to whether Johnson exercised discretion and independent judgment with respect to matters of significance. See Fed. R. Civ. P. 56(a); Celotex Corp, 477 U.S. at 322-23; Anderson, 477 U.S. at 249-50. Defendants claim that Plaintiff's duties required independent judgment because "Plaintiff attended crew chief meetings and instructed other employees on their job duties," and "Plaintiff had the discretion and ability to coach Simon Gregg, both on and off the race course." (Defs.' Resp. at 12 [Doc. No. 47].) Plaintiff, however, contends that as a blue-collar "mechanic," he had no authority to exercise independent judgment with respect to matters of significance. (Pl.'s Reply at 20-21 [Doc. No. 49].) Rather, he contends that that he merely followed Derhaag's direction to complete mechanical work on the race cars. (Id.) Thus, Plaintiff characterizes his role at Derhaag Motor Sports as similar to the insurance investigators' roles in Ahle and Fenton who also exercised little discretion. Ahle, 738 F. Supp. 2d at 906; Fenton, 663 F. Supp. 2d at 727. Since the parties disagree about which duties and tasks Johnson performed, the Court finds that determining whether Plaintiff's primary duty involved the exercise of discretion and independent judgment with respect to matters of significance is a question of fact best left to the jury. Accordingly, this question of fact serves as an additional basis for the Court to deny Plaintiff's motion for summary judgment as it applies to the applicability of the administrative exemption.

### c. Motor Carrier Exemption

The final exemption that Defendants claim applies to Johnson is the motor carrier

exemption.  Unlike the executive and administrative exemptions, the Court finds that

Defendants waived their right to plead the motor carrier exemption as an affirmative

defense.

The applicability of the motor carrier exemption depends on (1) the employer's

status, and (2) the type of work the employee performs.  29 C.F.R. § 782.2(a).  The

employer must be a "motor carrier," or a transporter of passengers or property by motor

vehicle for compensation.  See id.  The employee's work must "directly affect[] the

safety of operation of motor vehicles on the public highways in transportation in

interstate or foreign commerce."  Id. § 782.2(b)(2).  Examples of such safety affecting

activity includes serving as a "driver, driver's helper, loader, or mechanic."  Id.; see also

Ahle, 738 F. Supp. 2d at 912.  An employee's work may wholly, or *in part*, consist of

such activities in order to qualify for the exemption.  29 C.F.R. § 782.2(b)(2) (emphasis

added).  In fact, an employee qualifies for this exemption even if he performed the safety

affecting activity only "from time to time."  29 C.F.R. § 782.2(b)(3).  However, an

employee does not qualify for the exemption if the safety affecting activity was merely

"trivial" or so "insignificant as to be de minimis."  Id.

Here, as to the employer's status, Defendants presented no admissible evidence

indicating whether they had the required "motor carrier" permit to qualify as an employer

under this exemption.   As to the content of Plaintiff's work responsibilities, the record

indicates that Plaintiff's work, in part, consisted of driving Gregg's motor home interstate

to races across the country.  (Derhaag Dep. 26:9-17 [Doc. No. 48-1]; Johnson Dep. 57:17-20 [Doc. No. 48-3].)  Although driving the motor home was not part of Johnson's daily work tasks, arguably he was responsible for driving the home "from time to time." See 29 C.F.R. § 782.2(b)(3).

Plaintiff argues that he first learned of Defendants' motor carrier exemption defense in Defendants' Response Memorandum.  (Pl.'s Reply. at 8 [Doc. No. 49].)  Unlike the professional FLSA exemptions, Defendants make no mention of or reference to the motor carrier exemption in their Answer.  Thus, it is evident that Defendants failed to plead this affirmative defense specifically.  See Fed. R. Civ. P. 8(c).

Even though the Court does not construe Defendants' Answer as pleading the motor carrier exemption defense, Defendants may still raise this affirmative defense during summary judgment if (1) they provide Plaintiff with adequate notice of the defense, and (2) Plaintiff is not prejudiced by the delay.  First Union National Bank, 477 F.3d at 622; LaFleche v. Clark Products, Inc., 2007 WL 2023564, at *11.  In this case, Defendants fail to meet both requisite elements; and thus, the Court prohibits Defendants from raising this affirmative defense during summary judgment.

First, Defendants did not provide Plaintiff with adequate notice of the motor carrier exemption defense.  Neither of the two prior references to the motor carrier exemption, in Derhaag's deposition and in Defense counsel's legal memorandum, properly placed Plaintiff on notice that Defendants planned to assert this FLSA exemption as a defense.  During Derhaag's deposition, Plaintiff's counsel questioned Derhaag about the applicability of this exemption, but Derhaag responded that he did not

know whether Derhaag Motor Sports was licensed as a "motor carrier." (Derhaag Dep. 198:17 - 199:18 [Doc. No. 48-1].) Derhaag's lack of certainty about whether his business was licensed as a "motor carrier" certainly did not place Plaintiff on notice that Defendants not only qualified as a "motor carrier," but would later assert the motor carrier exemption as a defense to Plaintiff's claims.

The reference to the motor carrier exemption in Defense counsel's legal memorandum (Jones Aff., Ex. 8 at 1-2 [Doc. No. 45-8]), also did not sufficiently place Plaintiff on notice that Defendants may attempt to assert this exemption as a defense during litigation. Speeter & Johnson wrote the memorandum on July 19, 2012 and concluded that it was "likely" that the motor carrier exemption would not apply to mechanics employed by Derhaag Motor Sports. (Jones Aff., Ex. 8 at 1-2 [Doc. No. 45-8].) Thus, the Court cannot fairly assume that Plaintiff was on notice that Defendants would assert the motor carrier exemption as a defense simply because one document, which Defendants assumed was privileged until May 21, 2014, briefly discusses the motor carrier exemption. Not only does the FLSA exemption section not discuss Johnson by name, but the document also predates the filing of this lawsuit by more than one year. (Id.) Unlike First Union National Bank, Defendants did not inform Plaintiff about this affirmative defense in any other *pleadings* submitted to the Court. 477 F.3d 623-24. Accordingly, the Court cannot fairly construe Defendants' assertion of this affirmative defense as "constructively amending its pleadings." Id.

The Court also finds that Defendants waived the motor carrier exemption because, in addition to not having notice of the defense, Plaintiff was prejudiced by Defendants'

delay asserting the exemption.   Plaintiff contends that he was prejudiced by Defendants'

delay because "Johnson was not provided with a reasonable opportunity to conduct

discovery as it specifically relates to Defendants' claim that Johnson was classified as an

exempt employee" based on the motor carrier exemption.  (Pl.'s Reply at 8 [Doc. No.

49].)  The Court agrees.

        Unlike the plaintiff in <u>First Union National Bank</u>, Plaintiff did not have an

opportunity to discover all facts relevant to the defense. In <u>First Union National Bank</u>, the

Eighth Circuit held that the plaintiff was not prejudiced by the delay because he

demonstrated knowledge of the affirmative defense in his reply brief and "[a]ll facts

relevant to the defense [were] already on the record and not in dispute."  477 F.3d at 623-

24.  In contrast, here, while Plaintiff demonstrated knowledge of the motor carrier

exemption in his Memorandum in Support of his Motion for Partial Summary Judgment

(Pl's Mem. at 3-4, 14 [Doc. No. 43]), all relevant facts pertaining to the motor carrier

exemption are not on the record.  For instance, Defendants provided no admissible

evidence to prove that Derhaag Motor Sports is licensed as a "motor carrier" pursuant to

the FLSA, and Plaintiff alleges that he has not had the opportunity to conduct discovery

about the existence of such a license.

        In order to meet their burden at summary judgment, Defendants must have

provided admissible evidence corroborating that pursuant to the FLSA they qualify as

"motor carriers."  <u>See</u> Fed. R. Civ. P. 56 (explaining that "[a]n affidavit or declaration

used to support or oppose a motion must be made on personal knowledge, set out facts

that would be admissible in evidence, and show that the affiant or declarant is competent

to testify on the matters stated"); <u>Anderson</u>, 477 U.S. at 256 (finding that "a party opposing a properly supported motion for summary judgment may not rest upon mere allegation or denials of his pleading, but must set forth specific facts showing that there is a genuine issue for trial").  Although Defense counsel stated during the hearing that Derhaag Motor Sports has the requisite motor carrier license (Hr'g Tr. at 22), Defendants neither produced this evidence to Plaintiff, nor submitted an affidavit or other corroborating evidence with their Response Memorandum.  Thus, unlike <u>Coohey</u>, here the evidence does not support Defendants' belatedly raising this affirmative defense. <u>Coohey</u>, 172 F.3d at 1064 n.8.  Given that Plaintiff was unfairly surprised by the motor carrier exemption and prejudiced because he did not have "ample opportunity to respond" to the defense, the Court finds that Defendants waived their right to assert the motor carrier exemption at summary judgment.  <u>Cf.</u> <u>Coohey</u>, 172 F.3d at 1064 n.8 (finding that plaintiffs "suffered no prejudice" because they "had ample opportunity to respond" to defendants' delayed affirmative defense).  Accordingly, the Court grants Plaintiff's Partial Motion for Summary Judgment as it pertains to Defendants' waiver of the motor carrier exemption.

### 3.  "Willfulness" Under the FLSA

#### a.  Waiver of Statute of Limitations Defense

In addition to alleging that Defendants waived the three FLSA exemptions described in detail above, Plaintiff also claims that Defendants "have waived any claimed defense that its actions were not 'willful' as defined under the FLSA."  (Pl.'s Mem. at 15 [Doc. No. 43].)  "Ordinarily, a violation of the FLSA is subject to a two-year statute of

limitations." Smith, 418 F. Supp. 2d at 1141 (citing 29 U.S.C. § 255). But, "the statute of limitations may be extended to three years if the employer's violation is willful, i.e., the employer 'either knew or showed reckless disregard for the matter of whether its conduct was prohibited by statute.'" Id. (citing McLaughlin v. Richland Shoe Co., 486 U.S. 128, 133 (1988)). Thus, by arguing that Defendants waived lack of willfulness as a defense to Plaintiff's FLSA claims, Plaintiff hopes to extend the statute of limitations from two to three years. Employees bringing FLSA claims have the burden of establishing an employer's willfulness. Adams v. United States, 350 F.3d 1216, 1229 (Fed. Cir. 2003); see also Fenton, 663 F. Supp. 2d at 727-28. This willfulness standard requires more than mere negligence, and more than a mere failure to seek legal advice about a potentially difficult classification decision. Smith; 418 F. Supp. 2d at 134-35.

To support his allegation that Defendants willfully violated FLSA provisions within the meaning of 29 U.S.C. § 255 (Compl. ¶ 49 [Doc. No. 1]), Plaintiff states that "Defendants have failed to make, keep, and preserve records with respect to each of their employees sufficient to determine such employees' wages, hours, and other conditions and practice of employment, in violation of the FLSA, 29 U.S.C. § 201, *et seq*." (id. ¶ 53). Furthermore, Plaintiff argues that the legal memorandum written by Defense counsel strengthens his claim that Defendants willfully failed to pay him overtime. (Pl.'s Mem. at 16 [Doc. No. 43].)

As an initial matter, the Court notes that lack of willfulness under the FLSA is an affirmative defense that Defendants are required to plead in their Answer. See Fed. R. Civ. P. 8(c)(1). The Eighth Circuit explained in Mumbower v. Callicott that "29 U.S.C. §

255(a) was intended to serve as a conventional limitation on the remedy, not upon the right to bring the action, and must be pleaded as an affirmative defense in compliance with Fed. R. Civ. P. 8(c)." 526 F.2d 1183, 1187 n.5 (8th Cir. 1975). Therefore, in order to contest a willfulness allegation, a party that allegedly violated the FLSA must plead that the statute of limitations restricts the plaintiff's remedy.[12] See id.

Here, the Court finds that Defendants have not waived the lack of willfulness defense because they pled the statute of limitations as a defense in their Answer. In the "Affirmative and Other Defenses" section of Defendants' Answer, they state "[t]hat some or all of Plaintiff's claims under 29 USC § 201 et seq. are time barred by the Statute of Limitations." (Defs.' Answer ¶ 2 [Doc. No. 7].) The Court need not even rely on the Eighth Circuit's principle of substance over form, since the Defendants' Answer adheres to the form required by Rule 8(c). First Union National Bank, 477 F.3d at 622. By explicitly including the statute of limitations defense in their Answer, Defendants adequately placed Plaintiff on notice and provided him the opportunity to rebut the affirmative defense. Blonder-Tongue Labs., Inc., 402 U.S. at 350. Thus, Defendants

---

[12]     Plaintiff argues that pursuant to 29 U.S.C. § 255(a), Defendants must plead "good faith" as an affirmative defense in order to limit the statute of limitations to two years, rather than three years. (Pl.'s Reply at 26 [Doc. No. 49] (citing Reid v. Day & Zimmerman, 73 F. Supp. 892, 895 (S.D. Iowa 1947), aff'd, 168 F.2d 356 (8th Cir. 1948)).) The Court disagrees. "The willfulness standard employed in determining the statute of limitations is distinct from the good faith standard applicable to the issue of liquidated damages." Ahle, 738 F. Supp. 2d at 921 (citing Brown v. Fred's, Inc., 494 F.3d 736, 743 (8th Cir. 2007)). While a court's finding that an employer acted in good faith "is inconsistent with and would preclude a finding of willfulness," these two standards are otherwise distinct. Id. (citing Chao v. A-One Med. Servs., Inc., 346 F.3d 908, 920 (9th Cir. 2003)).

sufficiently satisfy the affirmative defense pleading requirement dictated by Fed. R. Civ. P. 8(c).  See Mumbower, 526 F.2d at 1187 n.5.

The Court now addresses Plaintiff's argument that Defense counsel's legal memorandum demonstrates, as a matter of law, that Defendants waived their statute of limitations defense.  The legal memorandum concludes that it is likely that the "mechanics" employed by Derhaag Motor Sports do not qualify for a number of FLSA exemptions, and thus, must be paid at an hourly rate and compensated for overtime hours worked.  (Jones Aff., Ex. 8 at 1-2 [Doc. No. 45-8].)  The Court finds that the legal memorandum, although strong evidence of willfulness at trial, is an insufficient basis for finding that Defendants waived the statute of limitations defense.  This document does not negate the statute of limitations affirmative defense pled in Defendants' Answer. Rule 8(c) provides the requirements for pleading an affirmative defense, and an evidentiary document does not alter the standard mandated by the Federal Rules of Civil Procedure.  See Fed. R. Civ. P. 8(c).  Given that Defendants pled the statute of limitations as an affirmative defense in their Answer, the Court holds that Defendants did not waive their right to assert the affirmative defense that their actions were not willful under the FLSA and Plaintiff's motion is denied in this respect.  Instead, a jury may consider the contents of the legal memorandum when deciding whether Defendants' alleged violation of the FLSA was indeed intentional.

**b.  Issues of Fact for Statute of Limitations Defense**

In addition to arguing that the legal memorandum establishes that Defendants waived their statute of limitations defense, Plaintiff also contends that, as a matter of law,

the memorandum proves that Defendants willfully failed to pay Johnson overtime.  (Pl.'s Mem. at 15-17 [Doc. No. 43]; Pl.'s Reply at 29 [Doc. No. 49].)  Plaintiff claims that "[d]espite a legal opinion from [Defense] counsel to the contrary, from July 19, 2012 to June 8, 2013, Defendants adamantly and recalcitrantly refused to pay Plaintiff for his overtime hours."  (Pl.'s Reply at 27 [Doc. No. 49].)  Johnson's reasoning is as follows: (1) Johnson was a mechanic employed at Derhaag Motor Sports; (2) the legal opinion states that it is "likely" that mechanics employed by Derhaag Motor Sports are not exempt from the FLSA; and therefore (3) by failing to pay Johnson overtime after reading this legal memorandum, Defendants willfully violated the FLSA.  (Id. at 27-31; Jones Aff., Ex. 8 at 1-2 [Doc. No. 45-8].)  Defense counsel stated in the memorandum that another motor sports company, Hendrick Motor Sports, faced a "similar issue" by misclassifying its "mechanics" as exempt employees.  (Jones Aff., Ex. 8 at 2 [Doc. No. 45-8].)  Plaintiff argues that although the section about FLSA exemptions in the legal opinion does not reference Johnson by name, this section of the memorandum is clearly about Johnson.  (Pl.'s Reply at 30-31 [Doc. No. 49].)  He bases his reasoning on the fact that Johnson was the only "mechanic" employed by Derhaag Motor Sports who was classified as an exempt employee at the time (id.), and Derhaag admitted that the other sections of the memorandum pertained to Plaintiff (Derhaag Dep. 253-57 [Doc. No. 48-1]).

Defendants, however, argue that "[w]hile the memorandum does indeed discuss the issue of whether a mechanic is considered an exempt or non-exempt employee, it does not specifically discuss whether Robert Johnson was an exempt or non-exempt

employee, as Plaintiff claims . . . ." (Defs.' Resp. at 8 [Doc. No. 47].)  Like Plaintiff,

Defendants also advance an intra-textual argument, but they reach a contrasting result.  In

essence, Defendants claim that because Defense counsel explicitly referenced Johnson in

other sections of the memorandum that pertained to him, their decision to not reference

Johnson by name in the FLSA exemption section was purposeful because that section

does not pertain to him.  (Id. at 10.)  Furthermore, Defendants contend that the Hendrick

Motor Sports' case vastly differs from this case for two reasons: (1) the misclassified

employees in Hendrick were "production workers," while here, Plaintiff was a "crew

chief;" and (2) Hendrick Motor Sports was a NASCAR team that required a large number

of mechanics, while Derhaag Motor Sportrs, which is a TRANS-AM circuit team,

requires significantly fewer workers.  (Id.)

     The Court concludes that a genuine issue of material fact exists as to whether the

content of this legal memorandum establishes that Defendants willfully violated the

FLSA.  See Celotex Corp., 477 U.S. at 322-23; Anderson, 477 U.S. at 249-50.  The

memorandum does not state, as Plaintiff avers it does, that Johnson is a "mechanic" or a

non-exempt employee.  Nor does the memorandum definitively conclude that mechanics

employed by Derhaag Motor Sports are non-exempt employees.  Rather, Defense counsel

simply states that Derhaag Motor Sports' mechanics "likely" do not qualify for a handful

of FLSA exemptions.  (Jones Aff., Ex. 8 at 1-2 [Doc. No. 45-8].)  Defendants have

demonstrated that a genuine issue of fact remains as to whether Johnson served as a

"mechanic" or "crew chief" while he was most recently employed by Derhaag Motor

Sports.  See supra Part I.A.  Moreover, as discussed in detail above, the content of

Johnson's duties also remains disputed.  Id.  Therefore, Defendants have "set forth specific facts showing that there is a genuine issue for trial."  Anderson, 477 U.S. at 256.

A jury could conclude that (1) Derhaag requested the FLSA exemption opinion to address his concerns about Johnson, and (2) the document serves as sufficient evidence of Defendants' willfulness for violating the FLSA.  However, these issues of fact are inappropriate for the Court to resolve at summary judgment.  See LePage v. Blue Cross & Blue Shield of Minnesota, No. 08-cv-584 (RHK/JSM), 2008 WL 2570815, at *3 (D. Minn. June 25, 2008) (finding that the applicability of the statute of limitations affirmative defense under § 255(a) "often involves a factual inquiry") (citing Morrison v. Quality Transports Servs., Inc., 474 F. Supp. 2d 1303, 1309 (S.D. Fla. 2007) (explaining that "[t]he issue of willfulness under § 255(a) is a question of fact for the jury not appropriate for summary disposition")).

Similarly, the Court finds that the reference to the Hendrick Motor Sports' case within the legal memorandum does not establish, as a matter of law, that Defendants willfully violated the FLSA.  Simply because Defense counsel provided Derhaag with information about the Hendrick case does not justify a finding of willfulness.  Since an issue of fact remains as to Johnson's primary duties as an employee for Derhaag Motor Sports, an issue of fact likewise remains as to whether Johnson's role for Defendants was akin to the production workers' roles for Hendrick Motor Sports.  Thus, the Court denies Plaintiff's motion with respect to the willfulness issue and finds that a genuine issue of material fact exists as to whether the content of this legal memorandum establishes that Defendants willfully violated the FLSA.

### III.    CONCLUSION

Plaintiff's Motion for Partial Summary Judgment [Doc. No. 41] is **GRANTED IN PART** and **DENIED IN PART** as follows:

1. Plaintiff's Motion to Strike Defendant Derhaag's Answers to Interrogatories is **GRANTED**.

    a. If Defendants wish to rely on this document in future proceedings, then Derhaag must amend his Answers to Interrogatories so the document complies with Fed. R. Civ. P. 33(b)(3) and (5).

2. Plaintiff's Motion is **GRANTED** insofar as Defendants have waived the right to assert the motor carrier exemption affirmative defense to Plaintiff's FLSA claims.

3. The Motion is **DENIED** in all other respects, consistent with this Order.

4. The Court also amends the caption in this case to reflect James Derhaag's correct middle initial, "E."


Dated:  November 10, 2014                     s/Susan Richard Nelson
                                              SUSAN RICHARD NELSON
                                              United States District Judge